# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHRISTOPHER L. WARTH,

                     Petitioner,     :       Case No. 1:24-cv-00549

   - vs -                      District Judge Jeffery P. Hopkins
                                    Magistrate Judge Michael R. Merz

 WARDEN,
  London Correctional Institution,

                                 :
             Respondent.

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Christopher Warth to obtain relief from his conviction in the Hamilton County Court of Common Pleas for felonious assault with a firearm specification, is before the Court on Petitioner's Objections (ECF No. 33) to the Magistrate Judge's Report and Recommendations recommending dismissal ("Report," ECF No. 30).

**Prior Proceedings in this Habeas Corpus Case**

**The Petition**

Warth pleads five Grounds for Relief as follows:

> **Ground One:** Petitioner's right to due process and fair criminal proceedings under the U.S. Constitution were violated due to the Ohio courts misinterpretation and misapplication of United States Supreme Court precedent of the "No Retreat Rule," when evidence was presented and argued that Petitioner was at fault in creating the situation because he did not consider retreat as an alternative, did

1

not stay in his home and did not retreat back into his home once outside.

**Ground Two:** Petitioner's right to a fair trial and due process protections under U.S. Constitution were violated when the Ohio court(s) failed to meet its burden of proving at least one of the following beyond a reasonable doubt that Petitioner: (1) was at fault in creating the situation that led to the use of deadly force; (2) did not have reasonable grounds to believe that he or another was in immediate danger of death or great bodily harm; (3) did not have an honest belief, even if mistaken, that he or another was in immediate danger of death or great bodily harm; or (4) used unreasonable force resulting in a decision that was based on an unreasonable determination of the facts and light of the evidence presented in the state court proceeding(s).

**Ground Three:** Petitioner's due process right(s) and right to a fair trial enumerated under the U.S. Constitution were violated by means of prosecutorial trial error when the prosecution engages in error(s) rising to misconduct by repeatedly arguing that Petitioner is obligated to retreat and consider retreat as an alternative when the law clearly prohibits the jury from considering such evidence.

**Ground Four**: Petitioner's due process right(s) and right to a fair trial enumerated under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution were violated when in this self-defense case a police officer was permitted to render an opinion on who was at fault, who was acting in self-defense, and who should have retreated based on their review of surveillance video of the incident.

**Ground Five**: Petitioner was denied the right to effective assistance of counsel as secured by the Sixth Amendment to the United States Constitution when his attorney fails to object to impermissible evidence, fails to proffer witness testimony and evidence causing prejudice to the petitioner.

(Amended Petition, ECF No. 9-1).

**The Report**

The Report recommends disposition of these claims as follows:

**Ground One** was found to be procedurally defaulted because Warth cited to the Ohio courts no

Supreme Court case law imposing a particular form of the defense of self-defense on the States

2

(ECF No. 30, PageID 1559).  Ground One was also found to be without merit because there are no such cases and to prevail in habeas a petitioner must show the state court decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. *Id.* at PageID 1561.

**Ground Two** was found to be without merit because "the Supreme Court has never adopted the proposition that the defense of self-defense must be adopted by the States in any particular form or at all." *Id.*

**Ground Three,** which claimed prosecutorial misconduct in misstating Ohio law on self-defense, was found to be without merit because the First District Court of Appeals found there was no such misstatement. *Id.*

**Ground Four** claimed error in the state courts' treatment of the testimony of Detective Webb. The Report concluded this claim was procedurally defaulted because there had been no contemporaneous objection and, in any event, rules regarding expert testimony were not binding on the States.  *Id.* at PageID 1562-65.

**Ground Five** claiming ineffective assistance of trial counsel was recommended to be dismissed as procedurally defaulted because it had not been fairly presented to the Ohio courts. *Id.* at PageID 1566.

**The Objections**

To the Report's thirteen pages of analysis, Warth has filed fifty-one pages of Objections. They are extraordinarily prolix and a point-by-point response would not serve any useful purpose. Instead, this Supplemental Report will deal only with substantial objections.  If the District Judge

3

desires a response to every point Warth makes, he need only ask.

Warth's Objections depend heavily on his legal construction of the facts of the underlying

offense.  The Hamilton County Court of Appeals heard this case on direct appeal and found the

following facts:

{¶3} At trial, the state introduced three surveillance videos taken from Warth's property. One was from inside Warth's home and showed the front door. The second video showed the front door from the porch. The third showed the driveway, yard, and sidewalk.

{¶4} April Estes testified that, in May 2021, after the police informed her that they could not pursue charges on the allegation that Warth had sexually assaulted Estes's daughter in 2007, she went to Warth's home to inform him that she knew about the assault. Estes's girlfriend, Ashley, was in the vehicle with Estes.

{¶5} Estes knocked on Warth's door and April Tyler, Warth's mother, opened the front door but remained behind the closed screen door. Video surveillance supports Estes's testimony that she never touched the door other than knocking on it and was not trying to get inside the home.

{¶6} According to Estes, she asked Tyler for Warth and explained the allegation against him. As the two began arguing, Warth came downstairs with a gun in hand. The surveillance video shows that Warth had the gun raised to where Estes could see it through the screen door. Estes testified that, when Warth came downstairs, he looked "like a maniac with his firearms and stuff."

{¶7} Tyler testified that Estes made no threats before Warth got downstairs with his gun already in hand. Warth went to the door and then put the gun on the kitchen table.

{¶8} As Estes, Tyler, and Warth continued to argue through the screen door, Tyler smacked Estes in the forehead through the screen door and then closed the solid door. Warth went into another part of the home. Estes walked off the porch of the home and toward the sidewalk. Tyler and Warth continued to argue with Estes from inside of their home. Tyler called 911 as the situation continued.

{¶9} Tyler told the operator that she did not think that Estes had any weapons. Warth went out onto the porch with his gun as Tyler spoke with the 911 operator. Estes stated that, by the time Warth exited

4

from the house with his gun the first time, Tyler had already shut the door and Estes was at or near the sidewalk. Tyler also came outside and began to argue with Estes again as Estes slowly backed off of the property toward the street. As Warth went back inside the house, Tyler picked up a flowerpot and motioned as if she were going to throw it at Estes.

{¶10} Estes testified that she did not leave the area because they were still engaging with her, and she was not going to turn her back on them. She added that she "wasn't getting out of there that day without getting shot" and she "knew that from the minute he answered the door with [the gun] in his hand."

{¶11} Warth continued to enter and exit the house. Eventually, Warth, gun in hand, walked to the end of the porch where Tyler was still arguing with Estes, who was on the sidewalk.
{¶12} As Estes stood on the sidewalk, Tyler and Warth approached her. As they got closer, Estes put her right hand in her right pocket and forcibly shook the pocket, then took a fighting stance. Estes testified that she told them not to come any closer. She denied having weapons or threatening to harm them because "that's not what [she went there for.]"

{¶13} Estes testified that she was begging Warth and Tyler to back off while she was holding her sweatpants up as they "tend to sag a little bit * * * from the weight" of her cell phone in her pocket. She stated that she was getting herself ready in case Tyler was going to hit her again because Tyler was "coming at [her]." Estes asserted that she kept her fist balled up inside of the pocket of her sweatpants "[p]robably just trying to scare them back."

{¶14} Tyler and Warth were within arm's reach when Estes, still in a fighting stance, stepped off the sidewalk onto the lawn and lunged toward Warth and then toward Tyler. Warth stepped back, pulled his gun from his left pocket, and switched it to his right hand. Warth shot Estes twice in the stomach as she lunged at Tyler. Estes's hands were at her side—with both hands empty and visible—when Warth shot Estes.

{¶15} After Warth shot Estes, Ashley attempted to pull her away from the scene. Warth, however, repeatedly pushed Estes down and kicked Estes in the chest while pointing the gun at both Estes and Ashley. Estes testified that she was certain that "he was going to blow [Ashley's] head off" because he kept pointing the gun at her, or that he would shoot Estes in the head after he "stomped [Estes's] head." Estes testified that she thought she was going to die.

5

> {¶16} Estes suffered lacerations to her liver and kidney, damage to her L3-L4 vertebrae, and she had an ileostomy bag for six months. Estes learned to walk again through physical therapy, though she continued to suffer from nerve damage in her leg.

*State v. Warth*, 2023-Ohio-3641 (Ohio App. 1ˢᵗ Dist. Oct. 6, 2023).

State appellate court findings of fact are presumed to be correct in later habeas corpus proceedings and the petitioner has the burden of rebutting them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Respondent relies on these findings of fact and the presumption of correctness in the Return of Writ (ECF No. 15, PageID 1217-20).

Petitioner's Traverse (ECF No. 27) is 121 pages long, but he devotes only four pages (PageID  1446-49) to reciting the facts from his perspective.  He does not attempt to rebut any of the Court of Appeals' findings of fact.  In the course of his recitation, he admits that he and his mother were safely inside their house when the confrontation began, that he came out of the house with his gun, and that he shot Ms. Estes twice in the stomach and then kicked her.  He admits that the video surveillance shows the entire confrontation lasted about ten minutes. *Id.* at PageID 1447, n.1.

Warth's case depends heavily on the recent change in the Ohio law of self-defense.   He notes "On April 6, 2021, R.C. 2901.09 removed the duty to retreat in self-defense cases, also known as 'Stand Your Ground' law or 'No Retreat Rule'." Then he claims that the "no retreat" rule has been "codified" by the United States Supreme Court in *Beard v. United States*, 158 U.S. 550 (1895); and *Brown v. United States*, 256 U.S. 335 (1921).  As the Report points out, *Beard* and *Brown* are **not** federal constitutional decisions.  Rather, they are federal common law decisions because the crimes in suit occurred on land within the exclusive territorial jurisdiction of the United

6

States.  To give a contemporary hypothetical example, if Warth's offense had occurred at Wright-Patterson Air Force Base and crimes there were still being prosecuted under federal common law, as opposed to Title 18 of the United States Code, then *Beard* and *Brown* would be relevant.

Warth's failure to make this distinction is understandable.  Most people seem to believe the United States Supreme Court decides only constitutional cases and it has very few occasions to decide federal common law cases, particularly since its jurisdiction was made discretionary in the 1920's just after *Brown*.

Warth's argument is complicated by his reliance on *Heller v. Doe*, 509 U.S. 312 (1993), and *McDonald v. Chicago*, 561 U.S. 742 (2010).  These are constitutional decisions of the United States Supreme Court.  *Heller* held that the right to keep and bear arms in the Second Amendment is an individual constitutional right and *McDonald* held that right was incorporated as applicable to, the States in the Due Process Clause of the Fourteenth Amendment.  While both cases spoke about self-defense as a reason for the Second Amendment, neither decision purports to hold there is a constitutional right to the affirmative defense of self-defense binding on the States.  The right to carry a gun for self-defense purposes, protected by the Second Amendment, does not attempt to codify the occasions when that firearm may be used in self-defense.

Ohio has chosen through the enactment of Ohio Revised Code § 2901.09 to eliminate the duty to retreat from the affirmative defense of self-defense.  But that does not mean that anyone who claims he was acting in self-defense in shooting another person can just rely upon the claim. Rather, the affirmative defense must be proved to the jury.  Here the facts were presented to the jury and they decided that Warth was not acting in self-defense.  Warth spends a great deal of time comparing the facts of this case with *Beard* and *Brown*, but that is immaterial because the Supreme Court did not impose any rule of constitutional law on the States that might be derived from those

7

opinions. The bottom line is that when you use lethal[1] force against another human being, you have to persuade the jury that you acted in self-defense. Warth failed to do that.

As to Warth's specific Objections, he asserts as to Ground One that errors of state law can violate the United States Constitution if they make the state law criminal process "fundamentally unfair." (ECF No. 33, PageID 1584, citing *Williams v. Anderson*, 460 F. 3d 789 at 816 (6th Cir. 2006). *Williams* does not support the proposition for which Warth cites it. Interestingly, however, it does support the proposition that cumulative error analysis is not available in habeas.

Warth then argues for several pages that the First District got the analysis of Ohio's new "no retreat" law wrong. Once again, that is a question of Ohio law on which this Court is not competent to pass in a habeas corpus case.

Warth then spends ten pages comparing the facts of his case with those in *Beard v. United States*, 158 U.S. 550 (1895)(PageID 1586-95). **But *Beard* is not a constitutional decision.** It is only when a state court decision is contrary to or an objectively unreasonable application of a Supreme Court constitutional decision that habeas relief is authorized. Warth then reargues the facts of *Brown v. United States*, 256 U.S. 335 (1921), which is also not a constitutional decision.

The link in Warth's logic comes next:

> If self-defense is the central component of the Second Amendment right, the Second Amendment is constitutional law, and The Due Process Clause of the *Fourteenth Amendment* fully incorporates particular rights contained in the first eight Amendments, it would be logical to assume that *Beard* and *Brown* are constructing a rule of constitutional law applicable to the states.

(Objections, ECF No. 33, PageID 1596). This argument fails to consider the historical nature of constitutional interpretation. *Beard* was decided ninety-eight years before the Court held in *Doe*

---

[1] Although Warth's victim did not die, the First District's findings make it clear she easily could have. Warth, an infantry combat veteran, shot her in the stomach, not the upper arm.

*v. Heller* that the Second Amendment protected an individual right and 115 years before *McDonald* held the Fourteenth Amendment incorporated the Second.  At the time *Beard* was decided, the prevailing Supreme Court view was against incorporation of the Bill of Rights by the Fourteenth Amendment.  See *Slaughter-House Cases*, 83 U.S. 36 (1873).  The Court had just expressly held that the Fourteenth Amendment Due Process Clause did not incorporate the grand jury clause of the Fifth Amendment.  *Hurtado v. California*, 110 U.S. 516 (1884).  That result was reaffirmed as recently as the 1970's.  *Branzburg v. Hayes,*408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975).

There is simply no Supreme Court decision which holds that self-defense is a protected federal constitutional right.  While the Second Amendment protects the right to carry a firearm, it does not embody any right to self-defense.  A person who uses his firearm to shoot someone else must depend on the self-defense law of the State where he is tried.

Beginning at PageID 1607, Warth states his Objections to the Report's conclusion that Ground Two as pleaded does not state a claim upon which habeas corpus relief can be granted.  As he pleaded it, Ground Two alleges that the State had produced insufficient evidence to refute his claim of self-defense.  The Fourteenth Amendment requires that the State present sufficient evidence to prove every element of a charged crime.  *Jackson v. Virginia*, 443 U.S. 307 (1979).  Warth does not cite any Supreme Court case law holding the State must disprove an affirmative defense by the same standard and no such case is known to the undersigned.

The Report interprets Ground Three as a claim of prosecutorial misconduct by misstating the law of self-defense.  Warth objects that what he really said was the prosecutor committed misconduct by misstating the duty to retreat as part of the law of self-defense (Objections, ECF No. 33, PageID 1612).

9

The entire Report treatment of Ground Three is:

> In his Third Ground for Relief, Warth contends the prosecution committed misconduct and deprived him of a fair trial by misstating self-defense law. The First District found no misstatement of Ohio self-defense law. Moreover Warth procedurally defaulted this claim by failing to raise it on direct appeal. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Ground Three should be dismissed.

(Report, ECF No. 30, PageID 1561).

In his Objections, Warth argues the claim is not about misstatement of the law of self-defense, but of misstatement of the duty to retreat. But Warth's whole case is based on the repeal of the duty to retreat as part of the law of self-defense. Be that as it may, the First District did hold that the prosecutor had not misstated anything about the duty to retreat. In deciding the Fourth Assignment of Error, the First District wrote:

> **A. The state did not suggest that Warth should have retreated.**
>
> {¶27} In his fourth assignment of error, Warth argues that the trial court erred to his prejudice by improperly admitting evidence of the possibility of retreat in a self-defense case as it was contrary to law.
>
> {¶28} Warth points to multiple instances in which the state allegedly elicited evidence of the possibility of retreat. But Warth objected once, on the third day of trial, after multiple instances of the alleged improper testimony occurred. Moreover, Warth's counsel elicited testimony that was similar to what Warth asserts the state improperly elicited. Thus, the fourth assignment of error may only be reviewed for plain error. *See Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 7.
>
> {¶29} Under R.C. 2901.05, when a defendant presents evidence that tends to support that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1); *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49. The state carries the burden to disprove one or more of the elements of self-defense in the use of deadly force: (1) the defendant did not create the situation giving rise to the affray, or (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily

harm and his only means of escape from such a danger was to use such force. *State v. Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, ¶ 17. The test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm. *State v. Moore*, 9th Dist. Summit No. 29581, 2023-Ohio-2864, ¶ 10.

{¶30} The newly-amended "stand your ground" law, R.C. 2901.09(B), provides that "a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(C) provides, "A trier of fact shall not consider the possibility of retreat as a factor in determining whether * * * a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."

{¶31} But R.C. 2901.09(C) is not an absolute prohibition on introducing evidence involving the possibility of retreat. Rather, the statute only prohibits fact finders from considering evidence involving the possibility of retreat to determine whether the defendant's belief that force was necessary was reasonable. Fact finders may, however, consider retreat evidence to determine who was at fault in creating the situation leading to the affray. *State v. Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, ¶ 88 (8th Dist.) ("While a person no longer has a duty to retreat from a place he or she is lawfully permitted to be, there is no language in the amended statute to suggest a trier of fact is precluded from considering whether the defendant was the initial aggressor or whether the defendant attempted to withdraw from the situation when determining whether the defendant was at fault in creating the situation giving rise to the affray. The narrow language of the amended statute does not place on triers of fact express restrictions on consideration of fault.").

{¶32} Warth takes issue with the state's opening statement, which discussed Warth, who was armed, leaving the safety of his home to reengage Estes. But this statement does not involve a duty to retreat. Moreover, the state clarified that Warth had no duty to retreat back into his house or from his property.

{¶33} Warth further asserts that Webb's testimony was improper because he testified to his understanding of the law as it related to his decision to arrest Warth, which was based on Warth leaving the

11

safety of his home to reengage Estes after she had left the property. Warth misconstrues this testimony as suggesting that Warth had a duty to retreat. He is incorrect. Webb never suggested that Warth had a duty to retreat. Rather, the testimony focused on Warth choosing to advance toward Estes after she had left Warth's property. In fact, Webb testified that Warth did not have a duty to retreat into the house when Estes lunged at him and Tyler.

{¶34} And the trial court's jury instructions clearly stated that Warth had no duty to retreat and that the jury was not to consider the possibility of retreat when determining whether Warth had a reasonable belief that force was necessary:

> Determining reasonable belief. In determining whether the defendant, in using force in self-defense, reasonably believed that the force was necessary to prevent injury, loss, or risk of life, or safety, you must not consider the possibility of retreat by the defendant.

> "No duty to retreat." The defendant had no duty to retreat before using force in self-defense if the defendant was in a place which he lawfully had a right to be.

{¶35} The trial court committed no error. We overrule Warth's fourth assignment of error.

*State v. Warth,* 2023-Ohio-3641 (Ohio App. 1ˢᵗ Dist. Oct. 6, 2023).

The quotation also supports the Report's finding of procedural default in that the First District found an absence of trial court objection and reviewed only for plain error. Plain error review is an enforcement of the contemporaneous objection rule, not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

The Objections do not discuss Ground Four which the Report recommends be dismissed for failure to state a claim on which habeas corpus relief can be granted, i.e., a claim under the federal Constitution.

12

In Ground Five Warth asserts he received ineffective assistance of trial counsel in various ways.  The Report recommends dismissing this claim as procedurally defaulted because it was not raised on direct appeal (ECF No. 30, PageID 1566).  Warth claims he fairly presented this claim by asserting in his Tenth Assignment of Error that if the First District found any claims procedurally defaulted, it constituted ineffective assistance of trial counsel for his counsel not to have raised the issue.  This conclusory statement with no analysis behind it is not a fair presentation of the issue.

**Conclusion**

Having reviewed the case in light of the Objections, the Magistrate Judge respectfully adheres to his prior recommendation that the Petition be dismissed with prejudice and because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 16, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

13